IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DAVID CULVER,

    Plaintiff,

v.                                      CASE NO. 5:16-cv-93-WTH-GRJ

J. BAYOLO, M.D.,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

This case is before the Court on ECF No. 44, Defendant J. Bayolo, M.D.'s, Motion for Summary Judgment. Plaintiff has filed a response in opposition to the motion, ECF No. 54, and the motion is therefore ripe. For the following reasons, the undersigned recommends that Defendant's motion be granted.

**I. INTRODUCTION**

Plaintiff, a *pro se* inmate in the custody of the Florida Department of Corrections ("FDOC"), initiated this action by filing a Complaint pursuant to 42 U.S.C. § 1983. ECF No. 1. The Complaint stems from the medical care that Plaintiff received while he was confined at Northwest Florida Reception Center (NWFRC). At the time the Complaint was filed, Plaintiff

was confined at Century CI.  Plaintiff is currently confined at Santa Rosa CI, following intervening transfers to Lake Butler RMC and Gulf CI.

In the Complaint, Plaintiff alleges that Defendant Dr. J. Bayolo and unidentified nurses were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment while Plaintiff was incarcerated at NWFRC.  *Id*.  Specifically, Plaintiff alleges that in November 2015, while confined at Blackwater CF, he fell in the shower and injured his back.  He was transferred the next morning to NWFRC.  Plaintiff alleges that he sought emergency treatment and was given a shot for his back and some antibiotics.  He contends that afterwards he was given the "runaround" by "medical staff and M.D."  Plaintiff alleges that he was denied care, a cushion to sit on, and pain relief.  He claims that he experienced pain in his left leg and trouble urinating.   Plaintiff alleges that he signed up for sick call "multiple times," including on January 24, 26, and 28, 2016, but that he was not seen.  He contends that on February 8, 2016, he was "run off" from medical and was told he was on callout to see the doctor.  Plaintiff claims that he was also experiencing severe itching at this time, for which he was eventually given a cream by the doctor.  Plaintiff continued to experience severe itching, sleeplessness, back pain, leg

numbness, and trouble urinating. He contends that his complaints were ignored for months. He concedes that an x-ray was performed, but he did not receive an MRI. ECF No. 1 at 5-8.

Plaintiff contends that Dr. Bayolo's and the unidentified nurses' actions amounted to "unnecessary wanton infliction of pain," failure to provide reasonably adequate medical care, and unnecessary delay of treatment that prolonged his suffering. He contends that the prison sick-call procedures are inadequate and are intended to reduce costs while failing to resolve serious medical problems. For relief, Plaintiff seeks $250,000 in compensatory damages. *Id*. at 8-22.[1]

Defendant Dr. Bayolo, the only named Defendant in this case, now moves for summary judgment as a matter of law. ECF No. 44.[2] Defendant argues that the undisputed evidence demonstrates that he was not deliberately indifferent to any serious medical need. *Id.* As support for the motion, Defendant has submitted Plaintiff's DOC medical records. ECF

---

[1]The Complaint includes several duplicates of the pages describing Plaintiff's claims.

[2]In the order directing service of the Complaint on Dr. Bayolo, the Court noted that if Plaintiff obtained the names of the unnamed nurse-defendants, he could seek leave to amend the Complaint to identify them by name. Plaintiff has not done so.

No. 43.  Plaintiff has not disputed the accuracy of the medical records in any respect that is material to this decision.  ECF No. 54.[3]

Plaintiff has filed, under penalty of perjury, a response in opposition to the motion for summary judgment along with evidence consisting of grievance copies and pages from Plaintiff's personal journal.  Plaintiff's evidence includes grievances that he filed at Century CI, after he was transferred from NWFRC.  ECF No. 54.  Plaintiff's Complaint is also signed under penalty of perjury (ECF No. 1) and, therefore, Plaintiff's complaint and his sworn opposition to the motion for summary judgment are properly treated by the Court like sworn affidavits.  *See Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[T]his Court has recognized that facts alleged in an inmate's sworn pleading are sufficient [to defeat a properly supported motion for summary judgment] and that a separate affidavit is not necessary.").

## II. EVIDENCE

Plaintiff's medical records reflect the following.  On Friday November 6, 2015, two days after arriving at NWFRC, Plaintiff was seen for

---

[3]*See* Fed. R. Civ. P. 56(c)(2) (A party "*may* object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.") (emphasis added).

complaints of numbness in his left leg and groin.  It was noted that he walked without a limp.  The examining nurse practitioner noted that Plaintiff fell in the shower the previous Wednesday and then "worked out," following which he was in a lot of pain.  The nurse noted normal right knee-jerk reflex and sluggish reflex on the left.  There was no evidence of bruising on Plaintiff's spine.  Plaintiff was given an injection of Depo Medrol and prescribed prednisone tablets.  He was advised to return the following Monday for followup.  ECF No. 43-1 at 64-65.[4]

Plaintiff did not return the following Monday.  On December 2, 2015, he filled out a sick call request seeking medication renewal and complaining of numbness and itching.  ECF No. 43-1 at 63.  Plaintiff made additional requests on December 7 and 9.  *Id*. at 61-62.  On December 9, 2015, a nursing note reflects that his gait was within normal limits and he was scheduled with a clinician for medication renewal.  *Id*. at 60.  On December 10, 2015, a nurse initiated a "Skin Protocol" and prescribed Benadryl.  *Id*. at 55-56.  On December 15, 2015, another Skin Protocol was initiated and Plaintiff was prescribed Benadryl.  *Id*. at 57-58.  The FDOC medical records reflect that Plaintiff refused to attend sick call on

---

[4]Page number references are to the FDOC records page number.

December 10 and December 15, 2015, and refused care for a medical emergency he initiated on December 15.  ECF No. 43-1 at 22-26.

On December 21, 2015, Plaintiff was seen by the ARNP for his follow-up visit after his November 6, 2015, evaluation.  He complained of continued numbness in his left leg, buttocks, and groin, as well as itching.  A scabies protocol was initiated, Plaintiff was scheduled for a lumbar spine x-ray, and his medications were renewed, including a prescription for Mobic for pain.  ECF No. 43-1 at 51.  The radiograph was performed on January 4, 2016, and the impression was "normal lumbar spine."  *Id*. at 177.

Plaintiff was again seen by a nurse on January 4, 2016, for skin complaints, and provided with Benadryl.  Plaintiff was advised that the itching may continue for up to six weeks following treatment.  *Id*. at 52-53.

The FDOC medical records reflect that Plaintiff was a "no show" for a scheduled sick call on January 25, 2016, and that he refused to sign a refusal of services form.  *Id*. at 20.

Plaintiff was seen by a nurse on February 1, 2016, for complaints of left leg numbness and incontinence.  He was provided with the results of the x-ray, but Plaintiff insisted that he needed an MRI.  He also requested

a cushion pass for hemorrhoids.  *Id*. at 48.  The ARNP followed up two days later, noting Plaintiff's normal x-ray results and nursing reports that his ambulation was normal.  His requests for a hemorrhoid cushion and an MRI were denied.  *Id*. at 47.

Plaintiff's one and only visit with Dr. Bayolo occurred on February 29, 2016.  Dr. Bayolo noted Plaintiff's complaints of "urinary dribbling" and "numbness" of his left leg, with a history of a fall.  Dr. Bayolo noted Plaintiff's normal x-rays.  His examination of Plaintiff's back was normal.  The notes do not reflect that Plaintiff complained of itching at that time.  Plaintiff was being prescribed Mobic for pain.  Dr. Bayolo ordered PSA testing for prostate cancer and prescribed Flomax to treat Plaintiff's incontinence.  ECF No. 43-1 at 46, 123-24.

The following day, Plaintiff was transferred to Century CI.  *Id*. at 45, 121.  At Century CI, Plaintiff's care was continued by other practitioners.  A May 2016 lumbar spine x-ray revealed "no obvious evidence of acute injury."  *Id*. at 176.  Plaintiff continued to complaint of pain and numbness, and subsequently received an MRI of his lumbar spine.  *Id*. at 171.  He was diagnosed with a herniated disc in August 2016, and underwent back surgery in November 2016 which resulted in "very good decompression

and good fusion".  ECF No. 54 at 16-18.

The Complaint was filed on March 22, 2016, a few weeks after Plaintiff was transferred from NWFRC to Century CI, and prior to his diagnosis of a herniated disc and surgery.  ECF No. 1.  As noted, the only named Defendant in this case is Dr. Bayolo.  *Id*.

### III.  STANDARD OF REVIEW

In accordance with Rule 56(a), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988.) But, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Morton v. Kirkwood,* 707 F.3d 1276, 1284 (11th Cir. 2013) (internal quotations and citations omitted); *see also Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 252 (1986) (to defeat summary judgment "there must be evidence on which the jury could reasonably find for the plaintiff") "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Brown v. City of Clewiston,* 848 F.2d 1534, 1540 n.12 (11th Cir. 1988) ("The summary judgment standard requires that we resolve all reasonable doubts in favor of the non-moving party, but it does not require us to resolve all doubts in such a manner.").

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987.) The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785–86 (11th Cir. 2005.)

In civil actions filed by inmates, federal courts

> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgement stage.

*Beard v. Banks,* 548 U.S. 521, 530 (2006). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See, e.g., Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001.)

The Eighth Amendment provides the right to be free from cruel and unusual punishment. U.S. Const. amend. VIII. Deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). An Eighth Amendment claim contains both an objective and subjective component. *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). Under the objective prong, a plaintiff must present evidence of an objectively serious medical need. *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995). A plaintiff has a "serious medical need" when the condition "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994). In either case, however, "the medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (citing *Farrow*, 320 F.3d at 1243).

Under the subjective prong, a plaintiff must provide evidence that the defendant acted with deliberate indifference to that serious medical need. *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999). The Eleventh Circuit has clarified that under this prong, the plaintiff must prove that the defendant: (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) did so by conduct that is more than gross negligence. *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013)); *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). Subjective knowledge of a risk of serious harm requires that the defendant actually knew of the risk of serious harm. *Goodman*, 718 F.3d at 1331–32. The prisoner must demonstrate that the defendant's response was so inadequate as to "constitute an unnecessary and wanton infliction of pain," and was not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor*,

221 F.3d at 1258. Incidents of negligence or medical malpractice, however, do not rise to the level of a constitutional violation. *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991); *Estelle*, 429 U.S. at 105–06 (neither "inadvertent failure to provide adequate medical care" nor "negligen[ce] in diagnosing or treating a medical condition" amounts to deliberate indifference to a serious medical need).

## IV. DISCUSSION

Defendant contends that he is entitled to summary judgment for three reasons: (1) the summary judgment evidence reflects that Plaintiff was provided with medical care for his complaints; (2) the record does not support a conclusion that Plaintiff had a serious medical need that went untreated; and (3) Dr. Bayolo examined and treated Plaintiff only once, on his last day at NWFRC, and it is irrelevant that Defendant did not order the MRI that Plaintiff requested. ECF No. 44.

In opposition, Plaintiff argues that Defendant has failed to meet his burden of demonstrating that there is no genuine dispute of material fact in this case. ECF No. 54. Specifically, Plaintiff argues that Dr. Bayolo's "failure to respond reasonably" by providing Plaintiff with adequate treatment caused him to suffer more injury in the future. Plaintiff contends

that he "suffered chronic pain and nerve damage causing numbness [and] loss of bladder control having to wear diapers after surgery and confined to a wheelchair." *Id*. Plaintiff disputes that he was a "no show" at sick call on the dates identified in his medical records, and contends that he signed up for sick call but was never called out "because of neglect." *Id*.

Although Defendant contends that Plaintiff's claimed back pain and leg numbness do not reflect a serious medical need, the Court finds that the objective medical evidence supports a conclusion that Plaintiff did have a serious medical need. After arriving at NWFRC and complaining of his fall and related injury, Plaintiff was examined by the ARNP who identified a sluggish left leg reflex and treated Plaintiff with Depo Medrol and prednisone for his complaints. ECF No. 43-1 at 64-65. Thus, prison medical staff both diagnosed Plaintiff's condition and recognized a need for treatment. *See Hill*, 40 F.3d at 1187. The question in this case, therefore, is whether Defendant acted with deliberate indifference towards that serious medical need.

The undisputed evidence demonstrates that Defendant was not deliberately indifferent towards Plaintiff's serious medical need. Plaintiff was examined and treated for his complaints on November 6, 2015, within

two days of his arrival at NWFRC. Plaintiff does not dispute that he did not put in another sick call request until December 2, 2015, when he sought treatment for numbness and itching. *See* ECF No. 54. He made two additional sick call requests before being seen on December 9, 2015, when the nurse observed that his gait was normal. His skin ailments were treated with medication. On December 21, 2015, he was examined by the ARNP who diagnosed scabies and renewed his prescriptions for medication to treat pain and inflammation. ECF No. 43-1 at 51, 60-63. In view of Plaintiff's complaints, he was referred for a lumbar spine x-ray, which was normal. *Id*. at 177. Plaintiff was seen again for his skin ailment on January 4, 2016. *Id*. at 52-53. Plaintiff disputes that he failed to appear for sick call on January 25, 2016, but whether or not he did so is irrelevant to the Court's analysis. It is undisputed that he was seen again shortly thereafter on February 1, 2016, for his complaints of left leg numbness and incontinence. *Id*. at 48. Plaintiff requested an MRI, but a nurse reviewed his request within two days, noted his normal x-ray and normal ambulation, and denied the request. *Id*. at 47. On this record, the undisputed evidence supports a finding that the nurse's denial was a reasonable exercise of medical judgment and does not reflect any disregard of a risk of serious

harm.

Plaintiff then saw Dr. Bayolo at the end of February 2016. Dr. Bayolo examined Plaintiff and documented normal findings, consistent with Plaintiff's x-ray results. Plaintiff was receiving medication for pain and inflammation. Dr. Bayolo ordered testing and treatment for Plaintiff's urinary incontinence. Plaintiff was transferred the Century CI the *next day*, where his care was taken over by different medical staff. *Id*. at 45-46, 121, 124.

As to Dr. Bayolo, the undisputed summary judgment evidence shows that he provided Plaintiff with care and treatment for his condition, consistent with the objective medical findings in Plaintiff's records. There is nothing in the record that supports Plaintiff's conclusory assertion that if Dr. Bayolo had referred him for an MRI he would have been spared the chronic pain, nerve damage, loss of bladder control, and loss of mobility that he allegedly suffered after his surgery, which took place nine months after Dr. Bayolo's one-time examination of Plaintiff. Where an inmate has received medical treatment, and the dispute is over the adequacy of the treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments made. *Harris*, 941 F.2d at 1507

(quoting *Waldrop v. Evans*, 871 F.2d 1030, 1305 (11th Cir. 1989)). A difference in medical opinion as to either an inmate's diagnosis or course of treatment generally does not rise to the level of cruel and unusual punishment. *Id.* at 1505. Plaintiff's claim that Dr. Bayolo should have referred him for an MRI or provided different treatment is merely a difference in medical opinion.

In sum, the undisputed evidence does not support a conclusion that Dr. Bayolo had subjective knowledge of a risk of serious harm to Plaintiff, that he disregarded any such risk, and that he did so by conduct that is more than gross negligence. *See Goodman*, 718 F.3d at 1331-32; *Farrow*, 320 F.3d at 1243. The Court therefore concludes that Defendant is entitled to summary judgment on Plaintiff's deliberate-indifference claims.

## V.  CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant J. Bayolo M.D's Motion for Summary Judgment, ECF No. 44, should be **GRANTED**.

**IN CHAMBERS**, at Gainesville, Florida, this 21st day of February 2018.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.